IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THE UNITED STATES OF AMERICA,** | : | |
| | : | |
| Plaintiff, | : | CRIM. NO. 06-95-01 |
| vs. | : | |
| | : | |
| **LACEY GRAVES,** | : | |
| | : | |
| Defendant. | : | |

**DuBOIS, J.**                                                                                           **AUGUST 22, 2007**

## ORDER & MEMORANDUM

### ORDER

**AND NOW**, this 22nd day of August 2007, upon consideration of Defendant's Post-Trial Motion for Judgment of Acquittal (Document No. 127, filed July 25, 2007) and the Government's Response to Defendant's Motion for Judgment of Acquittal (Document No. 137, filed August 10, 2007), **IT IS ORDERED** that Defendant's Post-Trial Motion for Judgment of Acquittal is **DENIED**.

### MEMORANDUM

Defendant, Lacey Graves, is charged in an Indictment with one court of armed bank robbery, in violation of 18 U.S.C. § 2113(d) (Count One), and one count of using and carrying of a firearm during the commission of a violent felony, in violation of 18 U.S.C. § 924(c) (Count Two). The charges arise out of an armed bank robbery of a Univest Bank branch in Warminster, Pennsylvania, on January 18, 2006. On July 23, 2007, the Court declared a mistrial because the jury was hopelessly deadlocked. Currently before the Court is Defendant's Post-Trial Motion for Judgment of Acquittal, which asks the Court to enter a judgment of acquittal as to Count Two of the Indictment, which charges the defendant with using and carrying a firearm during the

commission of a violent felony in violation of 18 U.S.C. § 924(c).[1]  The motion turns on the question whether the government's evidence was sufficient prove beyond a reasonable doubt that a real firearm was involved in the commission of the January 18, 2006 bank robbery.  For the reasons that follow, Defendant's Post-Trial Motion for Judgment of Acquittal is denied.

**I.     BACKGROUND**

The background of this case is set forth in detail in United States v. Graves 2007 WL 2319765 (E.D. Pa. July 13, 2007), United States v. Graves, 465 F. Supp. 2d 450 (E.D. Pa. 2006), and United States v. Graves 2006 WL 1997378 (E.D. Pa. July 12, 2006).  Accordingly, the Court recites only those facts necessary to explain its ruling.

Graves allegedly entered a Univest Bank branch in Warminster, Pennsylvania on January 18, 2006, displayed a handgun, vaulted over the teller counter, and stole $6,421 in cash.  Id. at 452.  According to the Government, the Assistant Manager of the branch noticed the robber approaching the bank on the outside sidewalk prior to the robbery.  Id.  The robber was allegedly carrying an umbrella that he moved to shield his face from the Assistant Manager.  Id.  According to the Government, the Assistant Manager then watched the surveillance monitors as the robber entered and robbed the bank.  Id.  Later, the Assistant Manager identified Graves as the robber from a photo array.  Id.

The first trial in this case commenced on March 5, 2007.  On March 9, 2007, "the Jury having deliberated for one (1) and a half (½) days in the trial of this case which began on March 5, 2007, and each Juror having stated that there was no probability that they could reach a unanimous verdict within a reasonable time and that they were hopelessly deadlocked, by

---

[1] Federal Rule of Criminal Procedure 29(c)(2) allows the Court to enter a judgement of acquittal if, as in this case, "the jury has failed to return a verdict . . . ."

2

agreement of the parties," the Court declared a mistrial.  Order of March 9, 2007.

A retrial commenced on July 16, 2007.  On July 18, 2007, after the government rested, defendant moved a judgment of acquittal under Federal Rule of Criminal Procedure 29 as to Count Two, the count that charged using or carrying of a firearm during the commission of a violent felony in violation of 18 U.S.C. § 924(c).  July 18, 2007 Tr. at 169-70.  Defense counsel argued that there was insufficient evidence to meet the government's burden of establishing beyond a reasonable doubt that the gun used by the robber was a real gun, an essential element under 18 U.S.C. § 924(c).  Id.  The Court denied the motion.  Id. at 170.  On July 19, 2007, after the defense rested, defense counsel renewed the motion for a judgment of acquittal.  July 19, 2007 Tr. at 68.  The Court again denied the motion, but stated that it wanted "an opportunity to review the transcript and see what evidence there is of real gun versus toy gun applicable to Count 2." Id. at 69.

On July 23, 2007, "the Jury having deliberated for approximately one (1) day in the trial of this case which began on July 16, 2007, and each Juror having stated that there was no probability that they could reach a unanimous verdict on either count of the indictment within a reasonable time and that they were hopelessly deadlocked, by agreement of the parties," the Court again declared a mistrial.  Order of July 23, 2003.

On July 25, 2007, defendant filed the instant Post-Trial Motion for Judgment of Acquittal.

II.     **STANDARD OF REVIEW**

A motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal

Procedure may only be granted where the evidence is insufficient to sustain the conviction.[2] United States v. Gonzales, 918 F.2d 1129, 1132 (3d Cir. 1990).  The court must determine whether the Government has adduced "substantial evidence to support" a guilty verdict. United States v. Wexler, 838 F. 2d 88, 90 (3d Cir. 1988).

In ruling on such a motion, a court may not weigh the evidence, nor may it make credibility determinations which are within the domain of the jury.  Rather, the court must consider the evidence in the light most favorable to the Government and draw all reasonable inferences in favor of the Government.  United States v. Wasserson, 418 F.3d 225, 237 (3d Cir. 2005).  Viewing the evidence in its entirety, a judgment of acquittal is warranted only if "no reasonable juror could accept the evidence as sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt."  United States v. Coleman, 811 F.2d 804, 807 (3d Cir. 1987).

**III.   ANALYSIS**

Defendant argues in his motion for judgment of acquittal that the "government's evidence failed to sufficiently prove that a real firearm was involved in the commission of the bank robbery at issue in this case."  Mot. at 2.  The Court concludes that the evidence in this case formed a sufficient basis to support a reasonable juror's conclusion of the defendant's guilt beyond a reasonable doubt on Count Two of the Indictment.  Accordingly, defendant's motion is denied.

---

[2] Federal Rule of Criminal Procedure 29(a) provides, in pertinent part: "The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal . . . if the evidence is insufficient to sustain a conviction of such offense or offenses."

**A.     Legal Standard**

In relevant part, 18 U.S.C. § 924(c)(1) imposes a five year minimum term of imprisonment upon a person who "during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm." It is an essential element of § 924(c) that the firearm be real. See id. A firearm is defined as "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. . . ." 18 U.S.C. § 921(a)(3).

The Third Circuit has "reject[ed] the argument that a firearms conviction may be sustained only through testimony by persons knowledgeable about firearms." United States v. Lawton, 66 Fed. App'x 323, 324-25 (3d. Cir. 2003) (citing United States v. Beverly, 99 F.3d 570, 572 (3d Cir. 1996)). Furthermore, "the production of the actual gun is not necessary." United States v. Lamour, 209 Fed. App'x 125, 126 (3d Cir. 2006) (citing Beverly, 99 F.3d at 572).

In Beverly, "the only evidence presented with respect to the firearms charge was the testimony of [the victim] that Beverly threatened him with a gun during the course of the robbery, and that the gun, which was displayed in the car, was a chrome-plated revolver." 99 F.3d at 572. The Third Circuit held that this was sufficient evidence, rejecting defendant's argument that "this testimony is inadequate since [the victim] did not testify as to the guns weight, length, or to the fact that he saw the gun for more than a 'fleeting glance.'" Id. (citing Parker v. United States, 801 F.2d 1382 (D.C. Cir. 1986); United States v. Marshall, 427 F.2d 434 (2d Cir. 1970); United States v. Jones, 34 F.3d 655 (8th Cir. 1994); United States v. Kirvan, 997 F.2d 963 (1st Cir.1993), United States v. Taylor, 54 F.3d 967, 975 (1st Cir. 1995)). As the Third

5

Circuit explained, the victim

> saw the gun on two different occasions, decreasing the likelihood that he was mistaken as to the authenticity of the weapon. Additionally, [the victim's] close proximity to Beverly while he brandished the weapon further diminishes the possibility that the object he was threatened with was anything other than a firearm. The defendant's own expert psychologist testified that, in the presence of a gun, the tendency of the victim is to concentrate attention on the gun instead of on the face of the assailant. Considering this testimony, [the victim] had ample time to view the weapon while he was in the defendant's car.

Id. at 573. The Third Circuit also noted that "Beverly threatened [the victim's] life numerous times during the course of the robbery." Id. ("The act of threatening others with a gun is tantamount to saying that the gun is loaded and that the gun wielder will shoot unless his commands are obeyed.").

**B.   Facts**

In this case, the bank teller who was robbed, Tara Detweiler, testified as follows during direct examination:

> A.   I knew we were getting robbed because we had -- it was a gentleman and he had -- he was dressed all in black and he had like sunglasses on, a hood and mask. He had a mask that went over his face, but you could see his cheek area, and he was coming towards my station. He had a blue and white umbrella. He went towards my station, he had to go around the railing outside of my station, and he jumped my counter. After he got behind my counter, I noticed then that he had a gun, because when he was taking my money I saw the gun that was in his hand.
> Q.   What did the gun look like?
> A.    It was black.
> Q.   Do you know the difference between a revolver and a semiautomatic?
> A.   Just the revolver has a -- a revolver, it goes in circles, that's all I know.
> Q.   Did this gun have a mechanism that went in circles?
> A.   It did not, no.
> Q.   What color was it?
> A.   It was black.
> Q.   Do you recall which hand the robber held it in?
> A.   In the right.
> Q.   Were you able to see the robber's hand?
> A.   I saw, yeah, he had gloves on.

July 17, 2007 Tr. at 59-61.  Ms. Detweiler further testified in direct examination:

> Q. During the course of the robbery, were you aware of the presence of the gun?
> A. I was after he jumped the counter, yes.
> Q. How so?
> A. Because I saw it. And when I was leaning down to -- I actually unlocked my bottom drawer and I saw the gun then, because when I was squatting down the gun was at his side, so I could see it.
> Q. Did you believe that the gun was real?
> A. I did very much so.
> Q. Did the robber say or do anything to dispel your impression that this was a real gun?
> A. No.
> Q. Did the robber say anything to you during the course of time that he was behind your teller station taking money out of the drawer, the one drawer and the (inaudible)?

Id. 63-64.  Finally, in redirect examination, Ms. Detweiler testified:

> Q. On Page 3, directing your attention to the bottom portion where it says, "Weapons," did it ask you whether you could identify by certainly any of the icons or pictures of -- or drawings of weapons?
> A. Yes.
> Q. And did you circle one?
> A. I did.
> Q. And what does it indicate under the image of the image that you circled?
> A. It says, "Automatic pistol."
> Q. Is that -- does that resemble what you saw?
> A. That's what it looked like.

Id. at 97-98.

During cross-examination, Ms. Detweiler confirmed that she is "not familiar with guns" and does not "handle guns." Id. at 91.  Additionally, when defense counsel asked her "whether the gun or what you believe to be the gun on that day was actually a real gun or a replica gun," Ms. Detweiler stated that she "didn't know." Id.

Kimberly Buckley, the branch's Assistant Manager, was in a break room during the robbery and was able to observe events in the other parts of the bank through a live video

7

feed.  She testified that she saw the robber standing behind Detweiler with a small pistol.  From her vantage point, Buckley could be no more specific.  Id. at 108-09.

### C. Analysis

On the basis of the evidence presented at trial, a judgment of acquittal is not warranted.  Ms. Detweiler was able to discern that the gun was black and that it did not have a cylinder, and selected an image of a semiautomatic handgun from the robbery description sheet.  Based on her view of the weapon, she "very much" believed the gun was real.  July 17, 2007 Tr. at 63.

Under Beverly, 99 F.3d at 572 and its progeny, the fact that Ms. Detweiler was not familiar with guns does not alter the Court's conclusion.  Additionally, United States v. Lankford, 196 F.3d 563 (5th Cir. 1999) addresses defendant's argument that Ms. Detweiler stated during cross-examination that she "didn't know" in response to defense counsel's question "whether the gun or what you believe to be the gun on that day was actually a real gun or a replica gun."  Id. at 576.  In Lankford, the defendant moved for a judgment of acquittal on the ground that there was "insufficient evidence because the Government did not admit an actual gun into evidence and *because his wife testified that she did not know (versus did not believe) that what he was carrying was in fact a "real" gun.*"  Id. (emphasis added).  Citing the Third Circuit's decision in Beverly as well as cases from other circuits, the Fifth Circuit rejected this argument: "We agree with the principle emerging from these opinions: The Government is not required to produce the actual weapon allegedly used, possessed, or carried and may rely on testimony, including the testimony of lay witnesses, in its attempt to prove that a defendant used, possessed or carried a 'firearm' as that term is defined for purposes of § 924(c)."  Id.  As in Lankford, the victim in this case, Ms. Detweiler, testified that she "believed" that the gun was real, but that she "didn't know."

Furthermore, as in Beverly, "the defendant's own expert psychologist testified that, in the presence of a gun, the tendency of the victim is to concentrate attention on the gun . . . ." Compare 99 F.3d at 573 with Dr. Fulero, July 18, 2007 Tr. at 199 ("I mean what more salient feature is there than a weapon?  It draws attention. . . . [P]eople look at the weapon. . . . [P]eople are using their processing time to look at the weapon . . . . [I]t's called weapons focus.").

The Court, relying on Beverly and Lankford, concludes that Defendant's Post-Trial Motion for Judgment of Acquittal should be denied.  Ms. Detweiler had ample opportunity to view the gun, and she testified that it was a black semiautomatic pistol that she "very much" believed was real.  As in Lankford, the fact that she testified on cross-examination that she did know it was a real gun does not so undercut her testimony that a judgment of acquittal is warranted.  In sum, the government's evidence is sufficient to support a reasonable juror's conclusion of defendant's guilt beyond a reasonable doubt on Count Two of the Indictment.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Post-Trial Motion for Judgment of Acquittal is denied.

                                                    **BY THE COURT:**

                                                    **/s/ Honorable Jan E. DuBois**
                                                    **JAN E. DUBOIS, J.**